# In the United States Bankruptcy Court
# for the
# Southern District of Georgia
## Savannah Division

| | | |
|---|---|---|
| In the matter of: | ) | Chapter 11 Case |
| DEL-A-RAE, INC. | ) | |
| | ) | Number <u>09-42267</u> |
| *Debtor* | ) | |
| | ) | |
| AGSOUTH FARM CREDIT ACA | ) | **FILED** |
| | ) | Samuel L. Kay, Clerk |
| *Movant* | ) | United States Bankruptcy Court |
| | ) | Savannah, Georgia |
| v. | ) | By lbarnard at 2:07 pm, Mar 08, 2010 |
| | ) | |
| DEL-A-RAE, INC. | ) | |
| | ) | |
| *Respondent* | ) | |

## MEMORANDUM AND ORDER
## ON MOTION FOR RELIEF FROM STAY

Debtor's case was filed on October 5, 2009. AgSouth Farm Credit, ACA ("AgSouth") filed a Motion for Relief from Stay on November 10, 2009, which was the subject of an evidentiary hearing on January 19, 2010. After consideration of the evidence I make the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

The parties stipulated that as of the date of the hearing Debtor owed approximately $4,860,000.00 to AgSouth. The note bears interest at a rate of 8% per annum

and calls for annual payments in April of each year in the approximate amount of $450,000.00. Debtor was unable to make the April 2009 payment and AgSouth agreed to defer the payment until October, at which time Debtor was still unable to make the deferred annual payment.

The indebtedness is secured by a first deed to secure debt in favor of AgSouth covering 654 acres more or less in Effingham County, Georgia, consisting of approximately 199 acres of upland property and 456 acres of delineated wetlands. Both the upland and wetland portions of the tract contain substantial merchantable and pre-merchantable timber, both pine and hardwood. The tract lies with frontage along Abercorn Road and Old Augusta Road in southeast Effingham County and is bordered generally on the east or southeastern side of the tract by Abercorn Creek, a major tributary of the Savannah River. The creek frontage extends a distance of approximately 9500 feet. However, the upland portion of the tract, except at the southernmost extremity, is separated from the creek by delineated wetland areas averaging approximately 1500 feet across, although that distance varies substantially.

AgSouth seeks stay relief based on its contention that there is no equity in the property and that it is not necessary to an effective reorganization. *See* 11 U.S.C. § 362(d). Debtor unsurprisingly opposes stay relief and both parties hired expert appraisers to testify to the value of the tract for the Court to make a final determination. Debtor's expert, Mr. William F. Dean, concluded that the land is worth approximately $3,944,840.00,

plus timber value of approximately $715,000.00—including an adjustment he made between the date of his report and the time of his testimony. That timber value derives only from timber located on the wetland portion of the tract, but includes none of the substantial timber which sits on the upland portion. Dean believes that it would make the upland portion less desirable for development if the upland tract were to be harvested. His final conclusion as to value then is approximately $4,660,000.00 which, if accepted would establish the Movant's burden of showing lack of equity. Debtor produced two experts. One expert, Mr. David D. Johns, testified that the timber value is over $1.8 million including timber both on the upland portion of the tract and the wetland portion. In other words, he values the timber at approximately $1.1 million more than Mr. Dean does, but he also contemplates harvesting the entire tract and not just the wetland portion. Debtor's land value was testified to by Ms. Gussie A. Nease, who concluded the value of the property to be $7 million excluding the value of the timber. Accordingly, Debtor's experts testified to a total value of the tract of some $8.8 million, which if accepted by the Court would clearly demonstrate that the Movant failed to meet its burden of proof as to a lack of equity.

Mr. Dean and Ms. Nease each employed four comparable sales for tracts within Effingham County to arrive at their values. Within the two sets of four comparables there were two properties that were used by both appraisers. After considering all the comparables, I conclude that the tract identified generally in their reports as the Coastal Premier/Effingham Board of Education tract ("BOE tract") is the overall most comparable tract. The BOE tract sale occurred in September of 2008. Both appraisers adjusted its sale

price per acre of $19,433.00 by a factor to account for the downturn in the real estate market since that date. Mr. Dean used a 25% reduction while Ms. Nease used a 20% reduction. Dean made an additional $7,500.00 per acre deduction based on his conclusion that the land quality, based on the types of soils on the tract of the subject property, is substantially inferior to the BOE tract and because two-thirds of the overall tract is delineated wetlands and not developable upland property. Ms. Nease made no such adjustment. On the other hand, she provided a 25% increase in the per acre value of the subject property based on the proximity of the tract to Abercorn Creek. Mr. Dean assigned no additional value to that proximity.

After careful consideration of the evidence I have concluded that the Movant has failed to meet its burden of proof in showing lack of equity. Taking Mr. Dean's appraisal, which if accepted *in toto* would establish lack of equity, I find that an upward adjustment in the value of the subject property due to the proximity to Abercorn Creek is approximate. A 25% increase in the per acre price (while accepting all the rest of Mr. Dean's figures) would raise the indicated value of this tract to $4,356,352.00. With the new timber value he assigned of approximately $715,000.00, it would raise the indicated value of the tract to $5,071,352.00. Thus, even accepting all the rest of Mr. Dean's conclusions, and with a debt of $4,860,000.00, I conclude on an interim basis that the Movant has failed to demonstrate a lack of equity in the property.[1] Thus, it is not necessary to consider whether

---

[1] By accepting the conclusions for the sake of this motion, I am not ruling on any other adjustments. I am simply noting that this court has enough information to deny stay relief—based on all of Mr. Dean's figures other than proximity to Abercorn Creek—without considering the other adjustments to the per acre value. In fact, I am unable to reach a final conclusion regarding the dichotomy in adjustments between the two experts. For the time being it is sufficient to conclude that in light of the single adjustment highlighted in this discussion, there is some equity.

Debtor met its burden of proving that this property is necessary to an effective reorganization.

I hasten to add that in reaching this interim conclusion, I feel that the record was insufficient for the Court to make a determination whether Mr. Dean's deduction of $7,500.00 per acre for land quality was sustainable or whether his valuation of the timber was correct. To the extent that at a later hearing I may conclude that land quality soil deduction to be excessive or find that the timber valuation to be too low, then the equity margin which admittedly appears very narrow in light of these interim conclusions would be increased. However, given the complexity of the soil question and the vast difference in the appraisers' view of that, together with the timber value, I simply find that there was not such a preponderance of the evidence available to the Court as would permit me to make a conclusion as to the effect of the soil on the land value, or the timber value.

I therefore hold on an interim basis that the Movant has failed to prove lack of equity. A continued hearing will be scheduled at a date and time to be determined by the Court. The Court at that time will take additional testimony most particularly on the land quality (soil question) and on the timber valuation, together with any additional evidence that the parties may be able to bring to the Court. Any sales more recent than September 2008 would be of particular value. The Court notes that neither expert could point to a more recent sale than 2008, and in light of the continuing difficulties in the real estate market throughout the country and in southeast Georgia, any more recent indicators of value that the experts

might be able to produce would be most helpful.

Although it is not necessary to address the additional stay relief issue of necessity to Debtor's reorganization, I do note that Debtor's principal Mr. Collins testified to his belief that the property is worth $12 million or more. Because of his intimate familiarity with the tract— which he purchased from his former employer precisely because it was a tract that he had managed for that employer and was familiar with its unique and valuable characteristics— he sees substantial upside potential value. He also testified to multiple possibilities for development in addition to the residential development uses testified to by Mr. Dean and Ms. Nease. In particular, he believes that conservation and recreational uses have high potential for the property as evidenced by interest that the federal government has expressed in the past in acquiring this tract, or part of the tract, for inclusion in the Savannah National Wildlife Refuge which is adjacent. He also testified to overtures from the Georgia Ports Authority, which has indicated some interest in all or part of the tract for its future expansion, due to its proximity to the main terminal facilities of the Georgia Ports Authority and its accessibility to the Georgia Ports Authority, both by water and overland.

Mr. Collins believes that one or both of these avenues might enable him to sell the property at a much higher figure than the debt owed to AgSouth so that it would bring in sufficient revenue to pay all of his other debts and assist this company in emerging from bankruptcy. Because of the nature of this interim order, Mr. Collins, as the owner of the debtor corporation, has some additional time to explore these possibilities, but that

window may be fairly narrow and it should go without saying that his efforts to market the property should be accelerated.

### CONCLUSIONS OF LAW

The bankruptcy code allows relief from the automatic stay if "the debtor does not have an equity in such property; and such property is not necessary to an effective reorganization . . . ." 11 U.S.C. § 362(d)(2). However, under 11 U.S.C. § 362(g) the movant bears the burden of proof on the issue of the debtor's equity in the property. Because there was not such a preponderance of the evidence available to the Court as would permit me to make any final conclusion of lack of equity, AgSouth has failed to carry its burden.

### ORDER

Pursuant to the foregoing, IT IS THE ORDER OF THIS COURT that the Motion for Relief from Stay filed by AgSouth Farm Credit ACA is DENIED on an interim basis and a final hearing will be scheduled by the Court.

_____
Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia
This ___ day of March, 2010.

AO 72A
(Rev. 8/82)

7