# In the United States Bankruptcy Court
# for the
# Southern District of Georgia
## Savannah Division

**FILED**
Samuel L. Kay, Clerk
United States Bankruptcy Court
Savannah, Georgia
By lbarnard at 4:23 pm, Dec 22, 2010

In the matter of: )
) Chapter 11 Case
DEL-A-RAE, INC. )
) Number 09-42267
*Debtor* )

## MEMORANDUM AND ORDER ON VALUATION

Debtor's case was filed on October 5, 2009. Debtor owns multiple valuable tracts of land throughout southeast Georgia. All of them are heavily encumbered and contain pre-merchantable and merchantable pine and hardwood timber as well as pasture and cultivated land. Del-A-Rae, Inc., ("Del-A-Rae") is owned by Stephen R. Collins, who has many years of experience in the timber industry in purchase, sale, and management of land and timber. Two of Del-A-Rae's tracts are the subject of this valuation order. The real estate consists of approximately 1,400 acres of land divided into two distinct tracts. The Ford tract comprises 470 acres in Screven County, Georgia, has a large valuable home and residential site, and the balance is largely devoted to timberland. The Dixon tract comprises 960 acres, also in Screven County, with limited improvements and is devoted primarily to timber management and production.

In order to acquire ownership of these tracts, Del-A-Rae-A-Rae granted first priority deeds to secure debt over both tracts to Coastal Bank of Effingham ("CBOE"). As

AO 72A
(Rev. 8/82)

of the date of the hearing in this matter, November 30, 2010, principal and accrued interest at the default rate of interest (16%) was approximately $4,246,000.00. Debtor contends that the interest should accrue at a non-default interest rate of 5%, which would yield at debt of approximately $4,028,000.00.[1] Both parties have hired appraisal experts who have produced reports and who have testified in this matter. The aggregate value which CBOE believes these tracts are worth is approximately $2.73 million for the Dixon tract and $1.97 million for the Ford tract for a total of $4.7 million. Debtor's experts are of the opinion that the Dixon tract is worth $3.33 million and the Ford tract is worth $2.18 million for a total value of $5.51 million. While the exhibits introduced at the hearing suggest values different from these, the experts testified that these values reflected more recent timber values.

Under either scenario, CBOE is oversecured. However, Debtor's proposed plan[2]—as it is currently drafted—places CBOE in Class 6. It provides that the obligation to CBOE will be paid in full by a surrender of the Dixon tract (at $3.46 million) and two other pieces of property. Under this plan Debtor would keep the Ford tract. CBOE objects to the plan arguing that the Dixon tract and the other property do not have enough collective value to pay CBOE 100% of its claim, and that it cannot be forced to accept a surrender in partial satisfaction of its claim while Debtor retains the Ford tract. CBOE alleges that this plan

---

[1] Except where the precise number is material I will utilize rounded or approximate numbers throughout this opinion.

[2] While the only Plan on file with the Court is dated April 22, 2010 (Dckt. No. 116) and has materially different terms from the terms discussed herein, it is apparent that Debtor's current intentions are divulged in the Amended Disclosure Statement, Dckt. No. 166 (August 2, 2010).

leaves it in a position where its undeniably fully secured claim might not be paid at one hundred cents on the dollar, including all accruing taxes, attorney's fees, and interest, which accrues until the debt is retired. As a result, the Court conducted an evidentiary hearing on valuation, heard from the appraisers hired by both parties, and makes the following Findings of Fact and Conclusions of Law.

> 11 U.S.C. § 506(a)(1) provides:
>
> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

Accordingly, the valuation of the collateral is necessary to determine the secured status of CBOE's claim, and to determine whether Debtor can prosecute its current plan. Perhaps more importantly in this particular case, 11 U.S.C. § 506(b) provides that:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of

> such claim, interest on such claim, and any reasonable
> fees, costs, or charges provided for under the agreement
> or State statute under which such claim arose.

CBOE is oversecured regardless of which loan balance and which collateral valuation this Court ultimately decides. Those determinations will set the amount of interest, fees, costs, and charges that may become part of CBOE's secured debt, at the expense of its equity cushion.

Although any land value analysis involves its own special difficulties, all the parties and the Court recognize that the most difficult element of valuation of this case is the timber. Understanding that all real estate is unique, it is still a manageable inquiry to take comparable sales and adjust them to glean a reasonably accurate valuation for residential real estate, apartment buildings, office buildings, condominiums, and to some extent, open tracts of land. However, that process becomes increasingly more difficult in assessing large tracts of land because true comparables are hard to find. That difficulty is magnified enormously when one deals with timber. The variables affecting timber value have to do not only with market conditions, which is a direct result of the overall economy and the construction industry in particular, but numerous other factors including: (1) whether the land on which the timber is located tends to be dry during all seasons, or whether it suffers from wet conditions making harvest difficult; (2) to the extent that wet conditions do occur, whether the price of timber on drier property, which is therefore easier to harvest, spikes upward; (3) whether the particular needs of a purchaser match the type of timber located on

a particular tract, whether it can be harvested for poles, saw timber, or pulp, and the ratio of hardwood to pine; (4) the total number of acres of merchantable timber; (5) the history of sound timber management practices in prior thinning operations on the property; and (6) the delivery costs, depending on the location of the tract and its ultimate destination. Because of the multiplicity of factors it is unquestioned that timber prices are somewhat speculative in the absence of an auction, often volatile, and are depressed at this time. Even in depressed conditions, however, there will be fluctuations that vary from month-to-month and even week-to-week.

Based on the discussion below, I conclude the following values:

|  | Debtor's Proposed Value | CBOE's Proposed Value | Value as Concluded by this Court |
|---|---|---|---|
| Ford tract land | $1,318,500.00 | $1,318,500.00 | $1,318,500.00 |
| Ford tract timber | $869,442.00 | $647,423.00 | $869,442.00 |
| **Total Ford tract Value** | **$2,187,942.00** | **$1,965,923.00** | **$2,187,942.00** |
| Dixon tract land | $1,828,455.00 | $1,628,540.00 | $1,728,288.00 |
| Dixon tract timber | $1,498,428.00 | $1,097,514.00 | $1,250,617.00 |
| **Total Dixon tract Value** | **$3,326,883.00** | **$2,726,054.00** | **$2,978,905.00** |
| **Total Value** | **$5,514,825.00** | **$4,691,977.00** | **$5,166,847.00** |

Although at the outset there was a difference of opinion of the values of the land portion of these two tracts, the major difference centered around the volume of timber and the value of the timber on each tract. Indeed, the parties ultimately stipulated that the land value on the Ford tract could be set at $1,318,500.00. Timber values ranged from

$647,423.00 to $869,442.00 for that tract. Having considered the testimony of the experts, their reports, and relevant authorities I conclude that the timber value on the Ford tract is $869,442.00.

Debtor's expert, James B. Lanier, Jr., found 412 acres of merchantable timber with a value of $2,110.00 per acre. CBOE's expert, Remer D. Clifton, found 437 acres of merchantable timber with a value of $1,481.00 per acre. The major reason for the price differential is that Lanier drew his prices from an industry report, the Timber Mart-South report for June 30, 2010, and September 30, 2010. This report provides high, average, and low prices for various categories of timber by region. Lanier selected the high value for the Southeast Region, believing that multiple sales over three months provided a better indicator of value than a narrower sample of recent sales. Even though Clifton's recent sales might be more current in time, the evidence is uncontradicted that timber prices are weak, extremely volatile, and subject to the whims of a particular buyer's need on a given date for a specific category of timber. For example, in a recent auction, bids were submitted which varied by as much as 34%. Letter, Exh. D-9. I therefore adopt the Timber Mart-South approach, which covers a broader market over a longer period of time and is better suited to finding a reasonable price estimate. Based on Timber Mart-South pricing, the value of the timber is $869,442.00, and I adopt that value. The Ford tract is therefore valued at $2,187,942.00.

On the Dixon tract, where there are no significant improvements, land value

appraisals ranged from $1.6 million (Exh. CBOE-2) to $1.8 million (Exh. C) and the timber value ranged from $1.1 to $1.5 million. I conclude that the Dixon tract land and timber value will be set as follows.

The principal difference in value was driven by the fact that Lanier found 598 acres of merchantable timber and Clifton estimated 423 acres. Timber Comparison, Exh. CBOE-1. Much of that difference occurred because Lanier's timber volume assumes cutting all the timber from property line to property line. Clifton's appraisal excludes some pre-merchantable timber and certain acreage along Brier Creek within a Stream Management Zone where harvesting of trees can adversely affect water quality in adjoining streams. As a result many owners elect, although they are not required, to minimize harvests in these buffers. Because Lanier acknowledged that Stream Management Zone buffers are customarily left intact, as did Clifton and Donald Pickard (another expert), I conclude that the value of timber shall be set using merchantable timber approximating the Clifton acreage estimate. However, for reasons set forth above, I will apply Lanier's Timber Mart-South pricing, which was approximately 13.95% higher on this tract than Clifton's pricing based on the same volume.[3] Because Clifton concluded a value of $1,097,514.00 using his volume and his pricing, I will adjust that number upward by 13.95%, to $1,250,617.00.

Lanier valued the Dixon tract land at $1,828,455.00, or $1,900.00 per acre.

---

[3] Clifton testified that while Lanier's volume estimate with Timber Mart-South pricing was $1,498,428.00, Clifton's value, using Lanier's volume but Clifton's pricing, would be $1,314,990.00. Therefore, I find Timber Mart-South Pricing to be 13.95% higher than Clifton's.

Clifton valued the Dixon tract at $1,628.540.00, or $1,700.00 per acre. Testimony on this facet of the case was less enlightening than other value questions, although through no fault of either of the appraisers. Given the unprecedented state of the real estate market; the relatively small number of comparable sales in the past year, when some price stability may have occurred; and the inherently subjective nature of many of the adjustments to comparables made by the competing appraisals; I find no solution to the dispute that is more compelling than simply averaging the conclusions reached by these two respected appraisers. The land value is therefore set at $1,800.00 per acre or $1,728,288.00. I therefore hold that the value of the Dixon tract is $2,978,905.00

ORDER

Based on the foregoing, the total value of the Ford and Dixon tracts, collateral held by CBOE, is $5,166,847.00.

_____
Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia

This 22nd day of December, 2010.