# In the United States Bankruptcy Court for the Southern District of Georgia
## Savannah Division

FILED
Samuel L. Kay, Clerk
United States Bankruptcy Court
Savannah, Georgia
By lbarnard at 5:00 pm, Mar 09, 2011

In the matter of: )
)  Chapter 11 Case
DEL-A-RAE, INC. )
)  Number <u>09-42267</u>
      *Debtor* )

## <u>MEMORANDUM AND ORDER</u>

### <u>FINDINGS OF FACT</u>

Debtor filed Chapter 11 on October 5, 2009, and proposed a Plan and a Disclosure Statement on April 20, 2010. Dckt. Nos. 116, 117. Citizen's Bank of Effingham ("CBE"), among others, objected to the Disclosure Statement on multiple grounds. This Court held a hearing to consider the Disclosure Statement on June 15, 2010. During that hearing Debtor withdrew the Disclosure Statement and was given until August 2, 2010, to file an amended Disclosure Statement.

Debtor filed its Amended Disclosure Statement on August 2, 2010. Dckt. No. 166. CBE objected to the Amended Disclosure Statement on multiple grounds. <u>Objection</u>, Dckt. No. 186. (Sep. 9, 2010). This Court held another hearing beginning on November 30, 2010, to determine the viability of Debtor's Amended Disclosure Statement. At that hearing it became clear to the Court that CBE and Debtor differed on the value of CBE's claim. CBE calculated its claim at the non-default contract rate until the maturity date

of the notes, and at the maturity[1] / default interest rate of 16% from the date of maturity forward. Debtor calculated CBE's claim at 5%. Based on CBE's calculations, the value of the claim at the time of the hearing was $4,246,507.00. Debtor, using the 5% interest rate, concluded a claim of $4,028,270.95 as of the time of the hearing. It was stipulated that there was equity in the collateral under either valuation, but the valuation of the claim remained an issue for plan confirmation purposes.

I declined to rule on this issue at that time and directed the parties to brief their positions. Debtor filed its brief on January 14, 2011, and CBE filed its response brief on January 25, 2011. Briefs, Dckt. Nos. 282, 283.

## CONCLUSIONS OF LAW

### PENDENCY INTEREST

I recently addressed a similar issue in In re Gillikin, Case No. 09-60178 (March 3, 2011) (Davis, J.). For the reasons addressed more fully therein, I held that the contract rate of interest was the appropriate rate of interest to apply between the petition date and the confirmation date (the "Pendency Period"). In that case, the creditor did not seek the default rate of interest during the Pendency Period. In this case CBE does seek the maturity / default rate of interest which I hold *is* the contract rate of interest ("Maturity / Default

---

[1] Five of the notes at issue matured on May 11, 2011, and one matured on March 13, 201. CBE calculated the value of its claim based on the maturity rate starting on the date of maturity.

2

Rate").[2] U.S. v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989) ("The natural reading of [§ 506(b)] entitles the holder of an oversecured claim to postpetition interest and, in addition, gives one having a secured claim created pursuant to an agreement the right to reasonable fees, costs, and charges provided for in that agreement."); In re Sublett, 895 F.2d 1381, 1385 (11th Cir.1990) (allowing default interest charges that were "provided for" by the loan instruments to be included in oversecured claims); cf. In re Carlton, 437 B.R. 412, 420 (Bankr. N.D. Ala. 2010); In re Ventura, 2010 WL 702898, *1 (Bankr. N.D. Cal.); In re Hudak, 2008 WL 4850196, *7 (Bankr. D. Colo.); In re Bender, 373 B.R. 25, 29 (Bankr. E.D. Mich. 2007); In re Han, 333 B.R. 881, 887 (Bankr. N.D. Fla. 2005).

In Gillikin the debtor's proposed disclosure statement sought to pay 4% interest (rather than the contract rate) during the Pendency Period. The debtor described that 4% rate as a "Till"[3] interest rate. This Court held that the debtor misinterpreted the holding of Till, denied approval of the disclosure statement, and held that the creditor was entitled to the contract rate during the Pendency Period. Gillikin is on all fours with the instant case.

## I. The Maturity / Default Rate

CBE seeks allowance of the Maturity / Default Rate in its calculation of its

---

[2] The maturity / default rate is the contract rate because the notes reached maturity according to their terms.

[3] Till v. SCS Credit Corp., 541 U.S. 465 (2004). In Till, a plurality opinion in a Chapter 13 case, the Court adopts "the formula approach" to determine plan interest rates. The formula starts with the prime rate and adjusts for opportunity cost, the risk of inflation, and the risk of default. The Court generally observed that adjustments of 1% to 3% were typical.

claim. I held in <u>Gillikin</u> that creditors are due the contract rate during the Pendency Period. Collier on Bankruptcy succinctly articulates the reason:

> The great majority of courts to have considered the issue since <u>Ron Pair</u> have concluded that postpetition interest should be calculated at the rate provided in the agreement, or other applicable law, under which the claim arose—the so-called "contract rate" of interest. This is consistent both with cases decided before <u>Ron Pair</u> as well as pre-Code case law.
>
> There are several reasons why section 506(b) should not be construed as supplying a means for engrafting special bankruptcy interest rates on allowed secured claims, First, section 506(b) does not expressly authorize the imposition of special bankruptcy interest rates. Second, section 506(b) does not prescribe meaningful standards for determining what an appropriate rate might be. Finally, the section lacks the kinds of protections contained in the Bankruptcy Code provisions intended to permit modification of the rate at which interest accrues on secured claims. Moreover, there is no basis upon which to infer from the language or purpose of section 506(b) that Congress intended section 506(b) to authorize special bankruptcy rates of interest.

4 COLLIER ON BANKRUPTCY ¶ 506.04[2][b][I] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.); *see also* <u>In re Milham</u>, 141 F.3d 420, 423 (2nd Cir. 1998) ("Most courts have awarded pendency interest at the contractual rate ...."); <u>In re Holmes</u>, 330 B.R. 317, 320 (Bankr. M.D. Ga. 2005) ("Most courts have allowed, or at least recognized a presumption of allowability for, [contractual] default rates of interest, provided that the rate is not unenforceable under applicable nonbankruptcy law."); <u>In re Hughes</u>, 230 B.R. 213, 230 (Bankr. M.D. Ga. 1998) (holding that "when a creditor is oversecured, solvency is not

required for the creditor to be entitled to postpetition interest and fees," and granting contractual default interest to the oversecured creditor of approximately 24%). The Maturity / Default Rate in this case (16%) does not violate Georgia law. O.C.G.A. § 7-4-2; O.C.G.A. § 7-4-18 (allowing interest rates of up to 5% per month on principal amounts of $250,000.00 or more).

> As I noted in Gillikin,
>
> I agree with these cases. The Bankruptcy Code does not require interest on the secured claim to be subjected to a "reasonableness" inquiry, as it does with fees and costs in § 506(b). Clearly, interest is treated differently under the statute, and I hold that interest accrues during the Pendency Period at the Contract Rate.

Because the Maturity / Default Rate is the contract rate, and because oversecured creditors are entitled to the contract rate during the Pendency Period, CBE is entitled to accrue post-petition, pre-confirmation interest at the Maturity / Default Rate for all times after the maturity of the notes.

## II. Balancing the Equities

Debtor suggests that this Court balance the equities involved in allowing CBE to calculate its claim using the Maturity / Default Rate. I rejected the "balancing of the equities" method in Gillikin. *See also* In re Sublett, 895 F.2d 1381 (11th Cir. 1990) (rejecting the "balancing the equities" approach to the extent it contravenes clear language in the Bankruptcy Code). Even if this Court had not rejected that approach, the equities in

this case would not justify a different outcome in this case. Debtor is solvent, and any decrease in its interest rate would only benefit the Debtor once it emerges from bankruptcy. Summary of Schedules, Dckt. No. 21. Sublett, 895 F.2d at 1385-86 (holding that an oversecured creditor is entitled to post-petition interest if the creditor is oversecured *or* if the estate proves to be solvent); *cf.* In re Holmes, 330 B.R. 317, 321 (Bankr. M.D. Ga. 2005) (noting that an estate need not be solvent for an oversecured creditor to be entitled to postpetition interest rates); In re Hughes, 230 B.R. 213, 230 (Bankr, M.D. Ga. 1998) (same).

### III. Penalty

Debtor alleges that "[t]he request for additional interest is punitive in nature." Brief, Dckt. No. 282, p. 8. To support this position Debtor cites multiple state court cases which analyze liquidated damages provisions. Those cases are not relevant to the issue at hand and do not inform my decision. Debtor's description of the interest as "additional" is erroneous. The maturity rate of interest on the notes is 16%. Five of the notes matured on May 11, 2010, and one matured on March 13, 2010. Therefore, the Maturity / Default Rate is not "additional" interest, and is not punitive in nature. *See* In re Cliftondale Oaks, LLC, 357 B.R. 883, 887-88 (Bankr. N.D. Ga. 2006) (holding that accruing interest at the default interest rate was not a penalty, but the addition of a 5% late charge on top of the default interest would have been unreasonable pursuant to § 506(b) and would have therefore been a penalty).

## POST-CONFIRMATION INTEREST

Debtor's Amended Disclosure Statement proposes to pay multiple creditors' claims at post-confirmation interest rates of 4%. Dckt. No. 166. In Gillikin I held that any post-confirmation interest rate must also reveal the basis for—in other words, the rationale used in arriving at—that interest rate in order to provide

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records . . . that would enable . . . a hypothetical investor of the relevant class to make an informed judgment about the plan.

11 U.S.C. § 1125. That information cannot simply reveal a "Till-based *number*," but must reveal how "a rate [is] derived through the *process* of applying Till and Southern States adjustments to prime"—as more thoroughly described in Gillikin—and must be sufficiently detailed to meet disclosure statement standards. Gillikin, Case No. 09-60178 at 16.

## CONCLUSIONS

For the reasons more fully articulated in Gillikin, creditors are entitled to the Maturity / Default Rate of interest during the Pendency Period, any post-confirmation interest rate must show the basis for approving that rate, and that basis must be consistent with this Court's Order in Gillikin. Any amended Disclosure Statement must be specific enough to enable creditors to make an informed judgment to either accept that rate or be prepared to carry their burden of showing the proper rate at the continued Disclosure Statement hearing.

*See* 11 U.S.C. § 1125; Till, 541 U.S. at 479 ("[S]tarting from a concededly low estimate and adjusting upward places the evidentiary burden squarely on the creditors, who are likely to have readier access to any information absent from the debtor's filing.").

Accordingly, approval of Debtor's Amended Disclosure Statement will be denied on the following grounds:

1. The Amended Disclosure Statement fails to properly calculate CBE's claim. The interest accrual during the Pendency Period should be calculated at the non-default contract rate until the maturity date, and at the Maturity / Default Rate thereafter.

2. The Amended Disclosure Statement purports to reduce CBE's claim through a surrender of the Dixon Tract, which the Amended Disclosure Statement values at $3,457,000.00 and which the Court has valued at $2,978,905.00.[4] Order, Dckt. No. 278 (Dec. 22, 2010).

3. The Amended Disclosure Statement provides insufficient information regarding the basis for the post-confirmation rates of interest proposed to be paid to Classes 4 and 10.

---

[4] I acknowledge that Debtor proposed the Amended Disclosure Statement prior to this Court's valuation of the Dixon Tract.

## ORDER

Pursuant to the foregoing Findings of Fact and Conclusions of Law, Debtor is hereby ORDERED to file a new Disclosure Statement and Plan by March 31, 2011.

_____
Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia

This 9th day of March, 2011.

AO 72A
(Rev. 8/82)