# In the United States Bankruptcy Court
# for the
# Southern District of Georgia
## Savannah Division

| | | |
|---|---|---|
| In the matter of: | ) | |
| | ) | Chapter 11 Case |
| DEL-A-RAE, INC. | ) | |
| | ) | Number <u>09-42267</u> |
| *Debtor* | ) | |
| | ) | |
| | ) | |
| | ) | |
| AGSOUTH FARM CREDIT, ACA | ) | **FILED** |
| | ) | Samuel L. Kay, Clerk |
| *Movant* | ) | United States Bankruptcy Court |
| | ) | Savannah, Georgia |
| | ) | By lbarnard at 5:24 pm, Mar 29, 2011 |
| v. | ) | |
| | ) | |
| DEL-A-RAE, INC. | ) | |
| | ) | |
| *Respondent* | ) | |

## MEMORANDUM AND ORDER
## ON MOTION FOR RELIEF FROM STAY

Debtor's case was filed on October 5, 2009. AgSouth Farm Credit, ACA ("AgSouth") filed a Motion for Relief from Stay on November 10, 2009. A hearing was conducted on January 19, 2010, after which I entered an Order denying that Motion on an interim basis and provided for a final hearing to be conducted at a later time. <u>AgSouth Farm Credit, ACA v. Del-A-Rae, Inc.</u>, Case No. 09-42267 (Bankr. S.D. Ga.) (Mar. 8, 2010). When that Order was entered Debtor contended that the property which secured AgSouth's note (the "Property"), was worth $8.8 million based on an appraisal by Gussie

Nease—substantially more than the $4.66 million concluded by AgSouth's appraiser, William F. Dean. Steve Collins, Debtor's owner, actually believed the property to be worth even more than $8.8 million based on overtures he received from the Georgia Ports Authority and from the federal government acting through the United States Fish and Wildlife Service ("the FWS") on behalf of the Savannah National Wildlife Refuge.

Final trial of this matter was delayed several times because the FWS had commissioned an appraisal of the property for its own use and Debtor believed that the appraisal would support Debtor's concluded value. Ultimately, that appraisal—by Neill F. McDonald—was provided to the FWS, to the Movant, and to the Debtor. This Court scheduled a hearing for March 14, 2011. Based on the evidence and applicable authorities I make the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

By stipulation of the parties, all the evidence received during the first hearing on this Motion on November 10, 2009, is incorporated fully into the record of this proceeding. Supplemental evidence was taken and that evidence reveals the following:

Mr. McDonald's appraisal of the property concluded a fair market value of $2.035 million for the Property.[1] The Property was described in this Court's prior Order as:

---

[1] Mr. McDonald's appraisal excluded approximately 27 acres lying west of the "new" Old Augusta Road per his client's request.

AO 72A
(Rev. 8/82)

2

> 654 acres more or less in Effingham County, Georgia, consisting of approximately 199 acres of upland property and 456 acres of delineated wetlands. Both the upland and wetland portions of the tract contain substantial merchantable and premerchantable timber, both pine and hardwood. The tract lies with frontage along Abercorn Road and Old Augusta Road in southeast Effingham County and is bordered generally on the east or southeastern side of the tract by Abercorn Creek, a major tributary of the Savannah River. The creek frontage extends a distance of approximately 9500 feet. However, the upland portion of the tract, except at the southernmost extremity, is separated from the creek by delineated wetland areas averaging approximately 1500 feet across, although that distance varies substantially.

AgSouth v. Del-A-Rae, Inc., Case No. 09-42267, p. 2 (Bankr. S.D. Ga.) (Mar. 8, 2010). Mr. McDonald assumed the highest and best use of the property would be for a buyer to sell most of the timber located in the "swamp wetlands" portion of the tract and hold the upland portions for future development as a residential tract. He found the market for residential real estate in Effingham County to be extremely poor with a backlog of inventory of approximately 3,750 homesites—with infrastructure already in place—awaiting sale. Peak sales of real estate in Effingham County at the height of the real estate boom reached approximately 600 new homes per year and the current sales volume, both residential and non-residential, is far lower than that. Because the tract of land is unique in its location and close proximity to Abercorn Creek, and because of excellent road access and proximity to Savannah, Mr. McDonald concluded that the swampland was worth $1,500.00 per acre and

that the 273 acres of uplands[2] were worth $720,000.00. He accepted the gross timber value of the FWS's independent expert, but reduced it to a net of $939,000.00 after taking into account costs of harvesting the timber. The result was a total value for the tract of $2.035 million. McDonald and other experts concede that the comparisons from which they make their valuation determinations are not perfect, but are the best available in the current market.

Mr. Dean had previously testified on behalf of AgSouth and concluded a value of $4.66 million.[3] Dean's updated valuation found no more recent sales of comparable property and found the market to be worse than it was at the time of his testimony. However, he reviewed some listings of comparable property which showed a range of $8,500.00 to $12,000.00 per acre for non-wetland timberlands in Effingham County, Georgia. From that he concluded a valuation of 210 acres of upland, non-wetland property at $10,000.00 per acre, for a total of $2.1 million. He believes the timber value of the tract, which he had originally set at $715,000.00, has now increased in value to $799,000.00. He also valued the 440 acres of swampland at $1,500.00 per acre, for a value of $666,000.00. Dean therefore estimated a total updated value of $3.566 million.

Ms. Nease did not perform an update to her previous appraisal, but Debtor relies on her previous appraisal in conjunction with the timber cruise of David Johns. That

---

[2]These 273 acres include 193.54 acres of upland, 63.89 acres of non-swamp wetland, and 15.48 acres of treed swamp.

[3]That January 2010 testimony updated an earlier September 28, 2009 appraisal, which had valued the Property at $4.48 million.

appraisal totaled $8.8 million, as reflected in my previous order.

I am persuaded that Mr. Dean's and Mr. McDonald's valuations are much closer to the true value of the Property than the value concluded by Ms. Nease. However, I am compelled to observe today—as I observed in my previous order—that Ms. Nease included a 25% increase in the per acre value of the subject property due to its unique characteristics and location along Abercorn Creek near the Savannah River. This location is near the Georgia Ports Authority, near the FWS Refuge, and near the employment centers of west Chatham County.

Neither Mr. Dean nor Mr. McDonald applied any upward adjustment based on those factors. In this uncertain real estate market I understand why an appraiser would be uneasy about making another upward adjustment to the per acre value which was revealed through a comparable sales analysis. However, I continue to agree with Debtor that there is something intrinsically different and special about this real estate. The bottom line is uncontradicted that this is the only real estate between downtown Savannah and Interstate 95 along the Savannah River which has privately owned upland access to deepwater over existing developed roads. That fact must add some value, and I believe that the market will ultimately reflect that belief, but it simply cannot be demonstrated to exist today based on current comparable sales. Still, it is not necessary for me to arrive at a specific value of this property any more today than it was on March 8, 2010. It is simply necessary for me to

determine whether there is equity in the real estate.

It is stipulated that the at the time this case was filed Debtor owed AgSouth $4,755,696.47. Adding interest at the non-default contract rate to that amount through the date of the hearing, the total debt is $5,330,122.13 with per diem interest accruing at $985.18. If the debt is calculated based on the contract default rate, the balance as of the date of the hearing is $5,395,053.55 with per diem interest accruing at $1,134.62. Accordingly, it is only necessary for the Court to determine whether the property is worth less than $5.3 million, and I do so find.

Even viewing the evidence in a light most favorable to Debtor there is no way to conceive of a value which is even near $5.3 million. For example, even if this Court were to take Mr. Dean's updated appraisal of $3.566 million and apply a $12,000.00 per acre price (the high end of his suggested range) to the upland portion of the Property, that addition would add $420,000.00 to the value of the tract.[4] Using Mr. McDonald's higher timber value would add $140,000.00 to the value of the tract.[5] These hypothetical adjustments yield a hypothetical value of $4.1 million. Accepting, for the sake of argument in this debtor-best-case scenario, a 25% upward adjustment on the value of the upland property based on Ms.

---

[4] Mr. Dean valued 210 upland acres at $10,00.00 per acre, but noted that the reasonable range extended to $12,000.00. This additional $2,000.00 per acre across 210 acres would add $420,000.00 to the value of the tract.

[5] Mr. Dean concluded a timber value of $799,000.00. Mr. McDonald concluded a timber value of $939,000.00. Taking Mr. McDonald's higher timber value would add $140,000.00 to the value of the tract.

Nease's estimate, that value increases by another $630,000.00.[6] This yields a hypothetical top-end value as of the date of the hearing of approximately $4.75 million. However, to reach even that value one has to make highly optimistic assumptions for each element of the Property's total value. Even with those assumptions in place, it is clear that the property has declined in value from a year ago. Notwithstanding Debtor's optimism, which mirrors in many respects the optimism it had in 2010, none of the eventualities that it hoped would occur have come to pass. This Court has the obligation to decide this case based on the evidence before it and not based on an expectation of future events which might have appeared reasonable a year ago, but which in today's environment appear to be purely speculative. I find that there is no equity in the Property.

## CONCLUSIONS OF LAW

### I. The Standard

Section 362(d)(2) of the United States Bankruptcy Code provides that

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay . . . if—
>
> (A) the debtor does not have an equity in such property; and

---

[6] The 210 acres, valued at $12,000.00 per acre would be worth $2.52 million. applying Ms. Nease's 25% upward adjustment would increase this value by $630,000.00.

AO 72A
(Rev. 8/82)

7

> (B) such property is not necessary to an effective reorganization . . . .

The United States Supreme Court, in applying § 362(d)(2) defined "necessary to an effective reorganization" as requiring:

> [N]ot merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization that is in prospect. This means . . . that there must be "a reasonable possibility of a successful reorganization within a reasonable time."

United Savings Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd., 484 U.S. 365, 375-76 (1988). This Court has further held that "necessary" means "logically required." In re Simmons, Case No. 10-60323 p. 7 (Bankr. S.D. Ga.) (Sep. 16, 2010); In re Benton, Case No. 09-41429 p. 6 (Bankr. S.D. Ga.) (Dec. 16, 2010). Accordingly, for property to be "necessary to an effective reorganization," it must be a logically required for a reorganization which has a reasonable possibility of succeeding within a reasonable time.

## II. Equity in the Property

As stated above, I find that there is no equity in the Property. Pursuant to 11 U.S.C. § 362(g),[7] once the movant has proved a lack of equity, the burden shifts to the

---

[7]"(g) In any hearing . . . concerning relief from the stay of any act under subsection (a) of this section—
    (1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and

debtor to prove that the property is necessary to an effective reorganization. For the reasons discussed more fully above, I hold that AgSouth has met its burden of proof and the burden shifts to Debtor to prove this property is necessary to an effective reorganization.

### III. Necessary to an Effective Reorganization

Debtor's contemplated plan, as it pertains to the Property, consists of two steps. First, Debtor proposes that it keep the Property and make adequate protection payments to AgSouth from the equity cushion in the Ford and Dixon Tracts. Second, Debtor anticipates surrender of the remaining Ford and Dixon real estate and residual timber to Citizen's Bank of Effingham ("CBOE") in full satisfaction of its debt. Those tracts secure a debt to CBOE, and are valued as follows:

|  | Debtor's Proposed Value | CBOE's Proposed Value | Value as Concluded by this Court |
|---|---|---|---|
| Ford tract land | $1,318,500.00 | $1,318,500.00 | $1,318,500.00 |
| Ford tract timber | $869,442.00 | $647,423.00 | $869,442.00 |
| **Total Ford tract Value** | **$2,187,942.00** | **$1,965,923.00** | **$2,187,942.00** |
| Dixon tract land | $1,828,455.00 | $1,628,540.00 | $1,728,288.00 |
| Dixon tract timber | $1,498,428.00 | $1,097,514.00 | $1,250,617.00 |
| **Total Dixon tract Value** | **$3,326,883.00** | **$2,726,054.00** | **$2,978,905.00** |

---

(2) the party opposing such relief has the burden of proof on all other issues."

11 U.S.C. § 362(g)

In re Del-A-Rae, Case No. 09-42267, p. 5 (Bankr. S.D. Ga) (Dec. 22, 2010). The Ford and Dixon Tracts combined have a value of approximately $5.1 million and the Citizen's Bank of Effingham ("CBOE") is owed approximately $4.6 million. However, CBOE also has a security interest in the following additional collateral: Lot 64, Soap Creek, the stipulated value of which is $185,000.00; a 30.96 acre tract, the stipulated value of which is $186,000.00; and a lot on Highway 119 in Guyton, Georgia, which Debtor values at $188,000.00. Debtor contends that based on these values, it has a $1.1 million equity cushion in CBOE's collateral, which it can use to fund adequate protection payments to AgSouth. The timber on the Ford tract was valued at $869,000.00 and the timber on the Dixon Tract was valued at $1.25 million. Debtor's current, unfiled plan is to cut timber from the CBOE tracts up to the amount of the $1.1 million equity—which it believes exists above the CBOE debt—and use those proceeds to fund the adequate protection payments to AgSouth.

AgSouth contends that even if the equity on the CBOE collateral could be so employed, there is no showing that this tract is "necessary"—that is, "logically required" to the success of Debtor's reorganization. In In re Simmons, the debtors proposed a plan which would allow them to keep their family farm. Case No. 10-60323 (Bankr. S.D. Ga.) (Sep. 16, 2010). However, this Court noted that the debtors did not live on the property and did not farm the property, and the property did not generate enough rental income to pay the debt which encumbered it. In short, the property was a financial drain on the estate. While

the debtors were able to move funds around and propose a plan which would have allowed them to keep the property, keeping the property would have been at the expense of a dividend to unsecured creditors. The property was not "logically required" to the reorganization and it was therefore not "necessary to an effective reorganization."

Similarly, in In re Benton, the debtor had no equity in her home but sought to retain it as "necessary to an effective reorganization." Case No. 09-41429 (Bankr. S.D. Ga.) (Dec. 16, 2010). That debtor owned a large commercial lot which, by all accounts, had a great deal of equity. The debtor sought to retain her home and fund her plan through the sale of the commercial property. This Court held that the commercial property, not the home, was necessary to the reorganization, and that the home was actually a financial drain on the estate. The home was not "logically required" for the success of the plan, and relief was granted to the secured creditor.

Debtor believes that the market will rebound and that the Property will be worth substantially more in five years than it is worth today. Debtor argues that that anticipated future equity could be used down the road to fund unsecured and priority claims. Debtor's hope is that when the real estate market rebounds, the value of the Property will increase and there will be an equity cushion in the Property. That equity cushion, if it ever materializes, could then be used to fund unsecured creditors. Debtor's optimism is commendable but speculative. Unbridled optimism is not a legal foundation solid enough

11

to support a plan. This is especially true when the plan would deny a dividend to unsecured creditors now with the hope that they might get a dividend later. AgSouth contends that the current equity on the Ford and Dixon tracts should be devoted now to the payment of unsecured and priority claims. AgSouth further contends that it should not be receiving payments—which could go to unsecured creditors—so that Debtor may keep property in which it has no current equity. Mr. Collins's belief that the value of this property will rebound over the next five years is sincere and admirable, but I agree with AgSouth's position that the Property constitutes a financial drain on the solvency of the estate and is therefore not necessary.

The Property is not "logically required" for the success of the Plan. A plan which has "a reasonable possibility of a successful reorganization within a reasonable time" would not rely on this property. Debtor has failed to carry its burden of showing that the Property is necessary to this reorganization. Accordingly, AgSouth is entitled to relief from the automatic stay.

## CONCLUSION

Because there is no equity in the Property, and because the Property is not necessary to an effective reorganization, AgSouth's Motion for Relief From Stay will be granted.

## ORDER

Pursuant to the foregoing Findings of Fact and Conclusions of Law, IT IS THE ORDER OF THIS COURT that the Motion for Relief From Stay filed by AgSouth Farm Credit, ACA, is GRANTED.

_____
Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia

This 29th day of March, 2011.